```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| IN RE NBR ) | |
| ANTITRUST LITIGATION ) | Master Docket |
| _____ ) | Civil Action No. 03-1898 |
| THIS DOCUMENT RELATES TO: ) | |
| ALL ACTIONS ) | Judge Cercone |
| _____ ) | Magistrate Judge Hay |

REPORT AND RECOMMENDATION

I.  RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss for Lack of Personal Jurisdiction submitted on behalf of defendant Zeon Corporation (Docket No. 53) be denied.

II.  REPORT

Plaintiffs commenced this class action suit under Section 1 of the Sherman Act, 15 U.S.C. § 1, alleging that defendants are manufacturers and sellers of NBR, or acrylonitrile-butadiene rubber, and have engaged in a "global combination or conspiracy to suppress and eliminate competition which had the effect of raising, maintaining, or stabilizing the price of NBR sold in the United States and elsewhere."[1]

---

[1] Consolidated Amended Class Action Complaint ("the Complaint"), ¶¶ 38, 45 (Docket No. 33).  NBR is a synthetic rubber that is highly resistant to petroleum products, alcohols and heat and is used to manufacture a variety of commercial and industrial products.  Id. at ¶¶ 40, 41.

Defendant Zeon Corporation ("Zeon") has filed a motion to dismiss the complaint as to it arguing that personal jurisdiction is lacking.

Once a jurisdictional defense has been raised, the plaintiff bears the burden of demonstrating that the defendant's contacts with the forum state are sufficient to give the court personal jurisdiction. Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996), cert. denied, 519 U.S. 1028 (1996). The nature of the plaintiff's burden, however, appears to depend on whether the Court has held an evidentiary hearing. If a hearing has been held, the plaintiff must establish jurisdiction by a preponderance of the evidence. See Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). Where an evidentiary hearing has not been held, however, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). See Commodity Futures Trading Commission v. Worldwide Commodity Corp., 366 F. Supp. 2d 276, 280 (E.D. Pa. 2005). The plaintiff may not simply rest on the pleadings in response to affidavits provided by the movant but, rather, must provide its own affidavits or other competent evidence to support a finding that defendant is properly subject to jurisdiction. See Meier v. Sun

Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)(Where the defendant submits affidavits in contravention to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction."). See also Melon Bank (East) PSFS, National Association v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

Further, establishing personal jurisdiction, which may be either specific or general, depends on the relationship among the defendant, the forum and the litigation. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368-69 (3d Cir. 2002). Specific jurisdiction will be found where the plaintiff's cause of action is related to or arises from the defendant's forum related activities. Id. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Thus, a single act by a non-resident defendant may be sufficient provided that it was purposefully directed toward the forum state so that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 n.18 (1985); World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980). See Hanson v. Denckla, 357 U.S. 235, 253 (1958)("[I]t is essential in each case that there be some act by which the defendant purposefully avails himself of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws.")

Where the cause of action does not arise out of the foreign corporations activities in the forum, however, personal jurisdiction will nevertheless be found if there are otherwise sufficient contacts between the foreign corporation and the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. at 414. To establish general jurisdiction, the plaintiff "must show significantly more than [the] mere minimum contacts" needed for specific jurisdiction but rather must demonstrate that the defendant's contacts with the forum state were "continuous and substantial." Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987). See Pinker v. Roche Holdings Ltd., 292 F.3d at 369 n.1, quoting International Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)(General jurisdiction "is established when a defendant's contacts with the forum are 'continuous and systematic.'" See also Wims v. Beach Terrace Motor Inn, 759 F. Supp. 264, 269 (E.D. Pa. 1991), quoting Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982)(A defendant's forum activities "must be 'extensive and pervasive' in order to be considered continuous and substantial" for purposes of exercising general personal jurisdiction.)

Moreover, it appears undisputed that in a federal antitrust case such as this, personal jurisdiction is appropriately evaluated "on the basis of a defendant's aggregate

4

contacts with the United States as a whole" and not merely with Pennsylvania as the state in which the federal court sits.  In re Automotive Refinishing Paint Antitrust Litigation, 358 F.3d 288, 298 (3d Cir. 2004).  See Pinker v. Roche Holdings Ltd, 292 F.3d at 369 (Finding that a "national contacts" analysis is proper when a case arises under a federal statute that contains a nationwide service of process provision.)

In the instant case, Zeon first argues that plaintiff is unable to establish general jurisdiction since its contacts with the United States through the NBR market are not sufficiently systematic or continuous.  Plaintiffs do not dispute Zeon's assertions in this regard but, rather, contend that the exercise of general jurisdiction is appropriate because of Zeon's contacts with the United States *outside* the NBR Market.  To support their position, plaintiffs point to Zeon's 2001 Annual Report in which it was reported that a high volume of "NBR latices for gloves" are expected to be shipped to North America; that shipments of "SIS" to North America were going strong in the first half of the fiscal year but stalled in the second half; and that sales of another product, "electron beam resists," has expanded into Europe and the U.S.[2]  The report also refers to a "collaboration with Ashland, Inc. of the U.S."  In addition, plaintiffs refer to Zeon's Website, wherein it is stated that

---

[2]   See Defendant's Exhibit A: 2001 Annual Report, pp. 5, 6, 9 (Docket No. 54).

Zeon is a world leader in the production of synthetic rubbers and is "strengthening its production and sales system, linking Japan, the U.S.A. and Europe."[3]

In our view, these "contacts" are insufficient to permit the Court to find general jurisdiction over Zeon. Even if it could be inferred that Zeon's exports to "North America" meant to "the United States," the extent of those shipments, how often they were made or if they have continued is entirely unclear. Moreover, the Court is unable to discern how any sales to the United States were orchestrated or where they were negotiated. See Bearry v. Beech Aircraft Corp., 818 F.2d 370, 375-76 (5th Cir. 1987) (Finding that the defendant deliberately avoided the benefits and protections of the laws of Texas by "exercis[ing] its right to structure its affairs in a manner calculated to shield it from the general jurisdiction of the courts of other states such as Texas by carefully requiring the negotiation, completion, and performance of all contracts in Kansas."); Simeone v. Bombardier-Rotax GMBH, 360 F. Supp. 2d 665, 674 (E.D. Pa. 2005) (Finding that the Court lacked general jurisdiction

---

[3] See Plaintiffs' Exhibits 9, 10 (Docket No. 91). Plaintiffs also argue that Zeon's website "touts its leadership in Butadiene technology, which has allowed it to license its technology to companies in the United States." Plaintiffs' Brief, p. 24. In fact, the website states only that the art of manufacturing Butadiena has been developed by Zeon "and transferred to 23 countries in the world." Plaintiffs' Exhibit 11. While the United States may very well be one of those countries, that is not at all clear from plaintiffs' exhibit.

6

over non-resident defendant where it structured its transactions so as to avoid the benefits and protections of the laws of the forum.) Nor does the mere fact that Zeon may have "collaborated" with an American Company provide the basis for finding its contacts with the United States were continuous and systematic.

Moreover, Zeon has submitted a Declaration of its Executive Managing Director, Masahiro Yamazaki, in which he states that Zeon has no offices, place of business, address, telephone or fax number in the United States; that it is not authorized or registered to do business in the United States; that it has no authorized agent for service of process in the United States; that it has no warehouse, distribution center, inventory, manufacturing or research facility in the United States; that it maintains no personal property or bank account in the United States; and that it has no officers, agents, distributors, wholesalers or employees in the United States.[4] As well, Mr. Yamazaki has attested to the fact that Zeon has not

---

[4] See Defendant's Exhibit A: Declaration of Masahiro Yamazaki ¶¶ 4-12 (Docket No. 53). Although it appears that a consultant to Zeon lived in the United States for a portion of the class period and that the Executive Managing Director of Zeon served as the interim President and CEO of a ZCLP, one of Zeon's U.S. affiliates, for one year, these contacts do not appear to be continuous, systematic or pervasive so as to find that Zeon afforded itself the benefits and protections of the laws of the United States. See Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d at 438 (Finding general jurisdiction where defendant had daily contacts with forum that were central to defendant's business.)

7

conducted any regular commerce in the United States.[5]  Plaintiffs have not provided any evidence to the contrary and it, therefore, appears that the Court may not properly exercise general jurisdiction over Zeon.

Zeon also argues that the Court does not have specific jurisdiction since it does not sell NBR into the United States, other than to its own subsidiaries, and does not and has not set prices at which its U.S. affiliates sell NBR or dictate any other terms of their NBR sales.[6]  Thus, Zeon contends that it has no power to fix prices of NBR sold to plaintiffs or anyone else in the United States and the factual predicate upon which to base specific jurisdiction is therefore lacking.

Plaintiffs do not directly address Zeon's argument in this regard but, rather, argue that the Court may exercise specific jurisdiction over Zeon because Zeon sells NBR to its domestic subsidiaries and by virtue of the fact that Zeon directly participated in the conspiracy to fix prices of NBR sold in the United States.

The fact that Zeon sells NBR to its U.S. subsidiaries, however, does not, in our view, serve to confer specific jurisdiction over Zeon.  As previously discussed, specific jurisdiction will lie where the defendant's contacts with the

---

[5]   Id. ¶ 11.

[6]   Yamazaki Decl. ¶¶ 10, 23.

forum give rise to the plaintiff's cause of action.  Here, plaintiffs' cause of action revolves around fixing the price of NBR sold to plaintiffs and other third parties.  Because the sale of NBR by Zeon to its subsidiaries does not relate to plaintiffs' cause of action, such contact with the forum cannot provide the basis for finding specific jurisdiction.[7]  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. at 414.  See also Wims v. Beach Terrace Motor Inn, Inc., 759 F. Supp. at 268 (Citing with approval Pennsylvania cases which have held that defendant's contacts with the forum state must represent the factual predicates upon which the cause of action is based.)

      Apparently acknowledging as much, plaintiffs also argue that specific jurisdiction over Zeon may be had by virtue of the fact that it participated in the conspiracy to fix prices which effected U.S. commerce.  To support its argument, plaintiffs rely on Calder v. Jones, 465 U.S. 783 (1984) ("Calder"), in which the Supreme Court found that personal jurisdiction could be exercised over a non-resident defendant who committed an intentional tort outside the forum but which the defendants knew would have a particular effect upon the plaintiff within the forum.  Id. at 789-90.  Because the libelous act in Calder was directly aimed at

---

[7] Moreover, because plaintiffs have alleged that Zeon's subsidiaries are also members of the conspiracy it would be somewhat incongruous to suggest that Zeon conspired to fix the price of NBR it sold to those subsidiaries.

the forum, the Court found that the defendants could reasonably expect to be haled into court there. Calder, 465 U.S. at 790.

Plaintiffs argument, however, appears to blur the line between conspiratorial jurisdiction, which plaintiffs claim is at issue here, and the "effects test" set forth in Calder. While the plaintiff in Calder was able to establish jurisdiction because defendants themselves aimed their activity at the forum and the effects of that activity were, in fact, felt in the forum, the instant plaintiffs are, for purposes of this argument, premising jurisdiction on the fact that Zeon was a member of a conspiracy which was aimed at the forum and not because of Zeon's independent actions. It appears undisputed, however, that "[m]erely belonging to a civil conspiracy does not make a member subject to the jurisdiction of every other member's forum .... Rather, there must also be substantial acts in furtherance of the conspiracy within the forum, of which the out-of-state co-conspirator was or should have been aware." Massachusetts School of Law at Andover v. American Bar Association, 846 F. Supp. 374, 379-80 (E.D. Pa. 1994). See Santana Products, Inc. v. Bobrick Washroom Equipment, 14 F. Supp. 2d 710, 718 (M.D. Pa. 1998). Thus, whether or not the conspiracy was aimed at the United States, plaintiff is nevertheless obligated to show that there was a substantial act taken in furtherance of the conspiracy in the United States of which Zeon was aware in order

to establish conspiracy jurisdiction.[8]  Id.  See Massachusetts School of Law at Andover v. American Bar Association, 846 F. Supp. at 380 (Merely alleging that the effects of the conspiracy were felt nationwide is not the same as alleging a substantial act took place in the forum.)

Here, plaintiffs have alleged in the Complaint that defendants were part of a global conspiracy; that defendants met at annual meetings of the International Institute of Synthetic Rubber Producers ("IISRP"); that the 2001 meeting took place in Kohala, Hawaii; that the object of the conspiracy was to fix prices of NBR rubber sold in the United States and throughout the world; that to carry out the conspiracy the conspirators participated in meetings and conversations in the United States and elsewhere at which time they agreed to fix prices of NBR sold in the United States and elsewhere.[9]

---

[8] Nor do any of the other cases cited by plaintiff compel a different result.  Indeed, in Stanislaus v. Pacific Gas & Electric Co., 1995 WL 819149 (E.D. Cal. Dec. 18, 1995), the plaintiff had not alleged that jurisdiction was proper because of the defendant's participation in a conspiracy.  Further, in In re Vitamins Antitrust Litigation, 270 F. Supp. 2d 15 (D.D.C. 2003), conspiratorial jurisdiction was discussed independently from the Court's "effects test" analysis.  Moreover, it, too, found that under a theory of conspiracy jurisdiction, the plaintiff is required to show that acts in furtherance of the conspiracy occurred in the forum. Id. at 27.  Finally, in Crompton Corp. v. Clariant Corp., 221 F. Supp. 2d 683 (M.D. La. 2002), to the extent the Court discussed jurisdiction based on an alleged conspiracy, it did so on the basis of whether or not a conspiracy had been properly plead under Fed. R.Civ. P. 8.

[9] Complaint ¶¶ 45-48.

11

In our view, it is reasonable to infer from these allegations that price fixing was discussed at the IISRP meetings, including the one held in Hawaii, and, thus, a substantial act in furtherance of the conspiracy occurred in the United States. Moreover, if Zeon attended the meeting as has been alleged, and which Zeon does not dispute, it would have been aware of those discussions.[10] Under these circumstances, it appears that conspiracy jurisdiction is properly invoked and the Court may properly exercise specific jurisdiction over Zeon.[11]

For these reasons, it is recommended that the Motion to Dismiss for Lack of Personal Jurisdiction submitted on behalf of defendant Zeon Corporation (Docket No. 53) be denied.

Within ten (10) days of being served with a copy, any party may serve and file written objections to this Report and recommendation. Any party opposing the objections shall have

---

[10] We note here that although Zeon has submitted Mr. Yamazaki's Declaration in support of its motion, it does not speak to the issue of conspiracy jurisdiction. It therefore appears that plaintiffs are entitled to have the allegations in the complaint taken as true and need not, at least at this juncture, provide further evidence to support a finding that jurisdiction is properly exercised. Miller Yacht Sales, Inc. v. Smith, 384 F.3d at 97.

[11] Having so found, we have not addressed the parties' other arguments regarding whether jurisdiction may be exercised over Zeon based on the activities of its subsidiaries or whether jurisdictional discovery is either necessary or appropriate.

seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

                                                s/Amy Reynolds Hay

                                                  AMY REYNOLDS HAY
                                       United States Magistrate Judge

Dated:    5 July, 2005

cc:  Stanley M. Stein, Esquire
     Feldstein, Grinberg, Stein & McKee
     428 Boulevard of the Allies
     Pittsburgh, PA 15219

     Daniel M. Berger, Esquire
     Berger & Lagnese
     437 Grant Street
     912 Frick Building
     Pittsburgh, PA 15219

     Michael D. Hausfeld, Esquire
     Steven H. Schulman, Esquire
     Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
     1100 New York Avenue, N.W.
     Suite 500, West Tower
     Washington, D.C. 20005-3934

     Robert N. Kaplan, Esquire
     Richard J. Kilsheimer, Esquire
     Jason A. Zweig, Esquire
     Kaplan, Kilsheimer & Fox
     805 Third Avenue
     22nd Floor
     New York, NY 10022

     Steven O. Sidener, Esquire
     Joseph M. Barton, Esquire
     Gold, Bennett, Cera & Sidener, L.L.P.

595 Market Street, Suite 2300
San Francisco, CA 94105-2835

Howard J. Sedran, Esquire
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Bernard J. Berry, Jr., Esquire
Giordano, Halleran & Ciesla
125 Half Mile Road
P.O. Box 190
Middletown, NJ 07748

Andrew B. Sacks, Esquire
John Weston, Esquire
Sacks, Weston, Smolinsky, Albert & Luber
510 Walnut Street
Suite 400
Philadelphia, PA 19106

Steven J. Miller, Esquire
Mark Darnell, Esquire
Goodman Weiss Miller
100 Erieview Plaza
27th Floor
Cleveland, OH 44114-1882

Conrad S.P. Williams, III, Esquire
St. Martin & Williams
4084 Highway 311
Houma, LA 70361-2017

Michael P. Lehman, Esquire
Thomas P. Dove, Esquire
255 Bush Street
15th Floor
San Francisco, CA 94104

John C. Evans, Esquire
Specter, Specter, Evans & Manogue
Koppers Building
26th Floor
Pittsburgh, PA 15219

Bruce E. Gerstein, Esquire
Garwin, Bronzaft, Gersteine & Fisher
1501 Broadway

New York, NY 10036

Steven J. Greenfogel, Esquire
Meredith, Cohen, Greenfogel & Skirnick
117 South Seventeenth Street
22nd Floor, Architects Building
Philadelphia, PA 19103

Steven A. Kanner, Esquire
Much, Shelist, Freed, Denenberg,
  Ament, Bell & Rubenstein
191 North Wacker
Suite 1800
Chicago, IL 60606

Bernard D. Marcus, Esquire
James S. Larrimer, Esquire
Marcus & Shapira LLP
301 Grant Street
35th Floor, One Oxford Centre
Pittsburgh, PA 15219-6401

William J. Baer, Esquire
Richard L. Rosen, Esquire
Franklin J. Liss, Esquire
Robert Mascola, Esquire
John Hutchins, Esquire
Arnold & Porter
Thurman Arnold Building
555 Twelfth Street, N.W.
Washington, DC 20004-1206

W. Joseph Bruckner, Esquire
Yvonne M. Flaherty, Esquire
Lockridge, Grindal, Nauen & Holstein, P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401

Anthony J. Bolognese, Esquire
Bolognese & Associates, LLC
One Penn Center
1617 JFK Boulevard, Suite 650
Philadelphia, PA 19103

Mitchel Zemel, Esquire
Samuel H. Foreman, Esquire
Weber Gallagher Simpson Stapleton Fires & Newby LLP

```
Two Gateway Center, Suite 1450
603 Stanwix Street
Pittsburgh, PA 15222

Daniel I. Booker, Esquire
Debra H. Dermody, Esquire
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219-1886

Benjamin G. Bradshaw, Esquire
Richard G. Parker, Esquire
Ian Simmons, Esquire
O'Melveny & Myers LLP
1625 I Street, N.W.
Washington, DC 20006-4001

Ruthanne Gordon, Esquire
H. Laddie Montague, Jr., Esquire
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103-6365

Joseph C. Kohn, Esquire
Kohn, Swift & Graf, P.C.
One South Street, Suite 2100
Philadelphia, PA 19107

Marc H. Edelson, Esquire
Edelson & Associates, LLC
45 West Court Street
Doylestown, PA 18901

Bernard J. Berry, Jr., Esquire
Giordano, Halleran & Ciesla
125 Half Mile Road
P.O. Box 190
Middletown, NJ 07748

John G. Unice, Esquire
Jones, Day, Reavis & Pogue
500 Grant Street
31st Floor, One Mellon Center
Pittsburgh, PA 15219

James M. Lynch, Esquire
12197 Brecknock Street
Oakton, VA 22124-2348
```

Susan G. Kupfer, Esquire
Glancy, Binkow & Goldberg
445 Market Street
Suite 1810
San Francisco, CA 94105

Mary Jane Edelstein Fait, Esquire
Wolf Haldenstein Adler Freeman & Herz LLC
55 West Monroe Street, Suite 1111
Chicago, IL 60603

Daniel R. Karon, Esquire
Weinstein, Kitchenoff, Scarlato, Karon & Goldman
55 Public Square
Suite 1500
Cleveland, OH 44113-1998

Mitchel Zemel, Esquire
Samuel H. Foreman, Esquire
Weber Gallagher Simpson
 Stapleton Fires & Newby LLP
Two Gateway Center, Suite 1450
603 Stanwix Street
Pittsburgh, PA 15222

William V. O'Reilly, Esquire
J. Andrew Read, Esquire
Jones Day
51 Louisiana Avenue
Washington, D.C. 20001

Britt M. Miller, Esquire
Andrew S. Marovitz, Esquire
Andrew J. Schaefer, Esquire
Mayer, Brown, Rowe & Maw, LLP
190 South La Salle Street
Chicago, IL 60603-3441

Jay Christopher Rooney, Esquire
Carmody & Torrance, LLP
18th Floor
195 Church Street
New Haven, CT 06509-1950

Bruce S. Kaplan, Esquire
Robert S. Loigman, Esquire
Friedman, Kaplan, Seiler & Adelman
1633 Broadway

New York, NY 10019

Evan A. Davis, Esquire
Deborah M. Buell, Esquire
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006

Mark Leddy, Esquire
Sara D. Schotland, Esquire
Adam J. Miller, Esquire
Cleary Gottlieb Steen & Hamilton
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801

Stewart M. Weltman, Esquire
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
39 South LaSalle Street
Suite 1100
Chicago, IL 60603

Brian Byrne, Esquire
Leah Brannon, Esquire
Jeffrey Leasure, Esquire
Cleary Gottlieb Steen & Hamilton
2000 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-1801